UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

WILBERT D.,[1]

                     Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                     Defendant.
_____

DECISION & ORDER

20-CV-1318MWP

**PRELIMINARY STATEMENT**

Plaintiff Wilbert D. ("plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Supplemental Security Income ("SSI"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 29, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned.

Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 12, 13). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

### I.     Standard of Review

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis.  *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*).  The five steps are:

(1) whether the claimant is currently engaged in substantial gainful activity;

(2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";

(3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");

>    (4)   if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his/her] past work; and
>
>    (5)   if not, whether the claimant retains the [RFC] to perform any other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.   The ALJ's Decision

In her decision, the ALJ followed the required five-step analysis for evaluating disability claims. Under step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since March 21, 2018, the application date. (Tr. 20).[2] At step two, the ALJ concluded that plaintiff had the following severe impairments: human immunodeficiency virus ("HIV"), non-Hodgkin lymphoma, and peripheral neuropathy. (*Id.*). The ALJ also found that plaintiff's other impairments were either nonsevere or not medically determinable. (Tr. 21-23). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (Tr. 23).

---

[2] The administrative transcript (Docket # 10) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

The ALJ concluded that plaintiff retained the RFC to perform the full range of work at all exertional levels, except that he was limited to frequent handling of objects and fingering with both hands, was unable to operate a motor vehicle, and should not be exposed to moving mechanical parts or unprotected heights. (*Id.*). At step four, the ALJ found that plaintiff had no past relevant work. (Tr. 30). At step five, the ALJ determined that other jobs existed in significant numbers in the national economy that, based on his age, education, work experience, and RFC, plaintiff could perform, such as grocery bagger. (Tr. 30-31). Accordingly, the ALJ found that plaintiff was not disabled. (Tr. 31).

### III.    Plaintiff's Contentions

Plaintiff argues that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error. (Docket # 12-1). Specifically, plaintiff maintains that the ALJ's conclusion that he was able to engage in work requiring frequent handling and fingering is unsupported by any medical opinion in the record, and therefore was improperly based upon the ALJ's own lay opinion. (*Id.*).[3]

### IV.    Analysis

An individual's RFC is his "maximum remaining ability to do sustained work activities in an ordinary work setting on a continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Soc. Sec. Ruling 96–8p, 1996 WL 374184, *2 (1996)). In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities,

---

[3] Plaintiff's contentions relate only to the physical component of the ALJ's RFC determination. Therefore, I address only the physical portion of the RFC. *See*, *e.g.*, *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 389, 394 n.3 (W.D.N.Y. 2018) ("[p]laintiff challenges only those portions of his RFC relating to his mental limitations[;] . . . [a]ccordingly, this [d]ecision and [o]rder addresses the RFC only as it pertains to [p]laintiff's mental limitations").

symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis." *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)). "To determine RFC, the ALJ must consider all the relevant evidence, including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010).

    The Commissioner has implemented new regulations relating to the evaluation of medical opinion evidence for claims filed on or after March 27, 2017, which apply here.[4] *See generally* 20 C.F.R. §§ 404.1520c, 416.920c. Under these new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [a claimant's] medical sources." *Id.* at §§ 404.1520c(a), 416.920c(a); *accord Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283, *6 (N.D.N.Y. 2021) ("[a]ccording to the new regulations, the Commissioner will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion") (quotations omitted); *Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136, *14 (S.D.N.Y. 2020) ("the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion") (citation omitted), *report and recommendation adopted by*, 2021 WL 134945 (S.D.N.Y. 2021). "Instead, an ALJ is now obligated to evaluate the persuasiveness of 'all of the medical opinions' based on the same general criteria: (1) supportability; (2) consistency with other evidence; (3) the source's relationship with the claimant; (4) the source's area of specialization; and (5) other relevant

---

[4] Plaintiff filed his claim for SSI on March 21, 2018.  (*See* Tr. 18).

case-specific factors 'that tend to support or contradict a medical opinion or prior administrative medical finding.'" *Amanda R. v. Comm'r of Soc. Sec.*, 556 F. Supp. 3d 145, 154 (N.D.N.Y. 2021) (footnote omitted) (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)).

According to the regulations, "supportability" and "consistency" are the "most important" factors in evaluating the persuasiveness of medical opinion evidence. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). Indeed, "[a]n ALJ is specifically required to 'explain how [he or she] considered the supportability and consistency factors' for a medical opinion," *Harry B. v. Comm'r of Soc. Sec.*, 2021 WL 1198283 at *7 (quoting 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)), and need not discuss the remaining factors, *see Rivera v. Comm'r of Soc. Sec. Admin.*, 2020 WL 8167136 at *14. As it relates to the "supportability" factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). With regard to the "consistency" factor, the regulations state that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under these new regulations, "the ALJ must provide information sufficient to allow a reviewer 'to trace the path of an adjudicator's reasoning.'" *Alisa O. v. Comm'r of Soc. Sec.*, 2021 WL 3861425, *4 (W.D.N.Y. 2021) (quoting 82 Fed. Reg. 5844-01, at 5858 (Jan. 18, 2017)). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or

she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, 2020 WL 5848776, *5 (N.D.N.Y. 2020) (quotations and citation omitted). Nevertheless, "an ALJ is not required to adopt a medical opinion in its entirety and may determine an RFC that differs from a medical opinion, where these differences are supported by substantial evidence in the record and are not the product of legal error." *Ferreras-Matos v. Comm'r of Soc. Sec.*, 2021 WL 7287630, *18 (S.D.N.Y. 2021) (collecting cases), *report and recommendation adopted by*, 2022 WL 292921 (S.D.N.Y. 2022); *Jeffrey G. v. Comm'r of Soc. Sec.*, 2021 WL 4844146, *10 (N.D.N.Y. 2021) ("[e]ven if the ALJ had effectively rejected a portion of [a medical opinion she found persuasive] . . . , she was under no obligation to accept the consultative examiner's opinion as a whole").

In her decision, the ALJ considered opinions assessing plaintiff's physical capabilities rendered by three medical sources. Consultative osteopathic physician John Schwab, D.O., completed an internal medicine examination of plaintiff on May 25, 2018. (Tr. 384-88). At the time, plaintiff reported that he had undergone chemotherapy treatment in 2014, which had caused tingling and hot/cold feelings in his feet and hands. (*Id.*). Plaintiff reported that he was able to cook, clean, do laundry, shop, and independently care for his personal hygiene. (*Id.*). Plaintiff also reported that he had previously been prescribed a cane due to a blood clot in his leg and continued to use the cane out of habit. (*Id.*).

Upon physical examination, plaintiff appeared in no acute distress with a normal gait and was able to complete the heel and toe walk without difficulty or use of a cane. According to Schwab, plaintiff was able to squat fully and rise from his chair without difficulty, and needed no assistance getting on or off the examination table or changing his clothing. (*Id.*). A neurological examination of plaintiff was normal, demonstrating full strength in all extremities, no sensory deficits, intact hand and finger dexterity, and full grip strength bilaterally.

(*Id.*).  Based on his examination, Schwab opined that plaintiff had "no restrictions" and that his use of a cane was not necessary.  (*Id.*).

On June 12, 2018, non-examining state consulting orthopedic physician C. Krist, DO, reviewed the available medical records, including Schwab's evaluation, and rendered an opinion concerning plaintiff's physical functioning.  (Tr. 87-96).  Krist noted that plaintiff had been diagnosed with HIV and B-cell Lymphoma and that he reportedly suffered from numbness and tingling in his hands and feet caused by his 2014 chemotherapy treatments.  (*Id.*).  She opined that plaintiff did not have any exertional, postural, or manipulative limitations but assessed that he should avoid concentrated exposure to hazardous conditions, including machinery and heights, due to his diagnosed neuropathy.  (*Id.*).

On January 17, 2020, plaintiff's treating physician, Alyssa Shon, MD, completed a "Physical [RFC] Questionnaire."  (Tr. 450-53).  Shon reported that she had been providing treatment to plaintiff every three months for the past six years and that she had diagnosed him with AIDS, diffuse B-cell Lymphoma, drug-induced neuropathy, and high blood pressure.  (*Id.*).  Shon reported that plaintiff experienced neuropathic pain in his legs and hands, along with back pain, which caused an unsteady gait with difficulty walking and standing.  (*Id.*).  According to Shon, plaintiff also experienced fatigue and decreased sensation in his feet and hands.  (*Id.*).

Shon opined that plaintiff's "constant neuropathic pain" would constantly interfere with his attention and concentration rendering him unable to perform even low stress employment.  (*Id.*).  She assessed that he could walk less than one block, sit for up to thirty minutes, and stand for up to ten minutes at a time.  (*Id.*).  According to Shon, plaintiff was limited to sitting, standing, and walking less than two hours of an eight-hour workday.  (*Id.*).

Shon further opined that plaintiff would need to change positions and would require a thirty-minute break every two hours of the workday.  (*Id.*).

Shon assessed that plaintiff could rarely lift up to ten pounds and was unable to engage in several postural movements, including twisting, stooping, crouching, squatting, and climbing ladders or stairs.  (*Id.*).  According to Shon, plaintiff was limited in his ability to handle and finger with both hands and indicated that he was only able to grasp, turn and twist objects up to ten percent of the workday and was completely unable to engage in fine finger manipulation or reaching, including overhead reaching.  (*Id.*).  Shon also opined that plaintiff would be absent from work more than four days per month and, due to his diminished immune system, needed to avoid exposure to hazardous materials such as mold, mildew, and dust.  (*Id.*).

Plaintiff's attorney requested clarification from Shon of her opinion, noting that the severe neuropathy-related symptoms identified in her opinion seemed inconsistent with Shon's treatment records, which suggested "very little indication . . . from 2018 forward of [plaintiff] having symptoms at that level of severity."  (Tr. 455).  Specifically, plaintiff's counsel requested that Shon "explain why your records do not suggest symptoms at the level of severity as noted in your assessment."  (*Id.*).  Shon replied by indicating that plaintiff suffered from an "ongoing issue" and that "medically, not much can be done."  (*Id.*).

The ALJ considered the opinions provided by Schwab, Krist, and Shon in formulating plaintiff's physical RFC.  (Tr. 23-30).  Although the ALJ recognized that Shon was plaintiff's treating physician, she determined that Shon's opinion was not persuasive, concluding that it was not supported by specific medical evidence and was not consistent with the record as a whole, including Shon's treatment records.  (Tr. 28-29).  According to the ALJ, with the exception of diminished sensation in his fingertips, plaintiff's medical records reflected generally

normal physical and neurological examinations, characterized by intact sensation, normal reflexes, and the absence of motor sensory deficits. (*Id.*). Additionally, the ALJ concluded that the severe limitations assessed by Shon were inconsistent with plaintiff's broad range of daily activities, which included caring for himself, as well as his home, elderly parents, grandchildren and great-grandchildren. (*Id.*).

With respect to the opinions rendered by Schwab and Krist, the ALJ found them to be partially persuasive. (Tr. 29-30). According to the ALJ, Krist's conclusion that plaintiff should avoid exposure to hazardous conditions such as moving mechanical parts and unprotected heights was well-supported by the record. (*Id.*). The ALJ concluded that the record nonetheless supported an additional environmental limitation restricting plaintiff from operating motor vehicles to account for plaintiff's complaints of numbness and tingling in his feet. (*Id.*). The ALJ also reasoned that plaintiff's complaints of numbness, tingling, and pain in his hands, coupled with some indication in the treatment notes that plaintiff exhibited diminished sensation in his fingertips, also warranted the inclusion of manipulative limitations. (*Id.*).

Plaintiff maintains that the ALJ's RFC is not supported by substantial evidence because the ALJ rejected the manipulative limitations assessed by Shon, the only medical source to assess any manipulative limitations. (Docket # 12-1). I disagree. As discussed above, in formulating the RFC, the ALJ considered the record as a whole, including plaintiff's treatment notes, his activities of daily living, and the medical opinions authored by Shon, Krist, and Schwab, all of whom were aware of and evaluated plaintiff's complaints of neuropathy in his hands and feet. The ALJ did not find the severely restrictive limitations assessed by Shon to be supported by the record, concluding instead that the opinions of Krist and Schwab, which identified minimal limitations, were generally persuasive. The ALJ's RFC findings account for

11

the environmental limitations assessed by Krist, while also crediting plaintiff's complaints of numbness and tingling in his hands and feet and the treatment notes documenting some decreased sensation in his fingertips. As noted above, "[a]n ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in [the] decision"; after all, it is the ALJ who is "tasked with weighing all of the evidence available to make an RFC finding that is consistent with the record as a whole." *Coleman v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d at 399 (internal quotations and brackets omitted). I find that the ALJ's RFC determination is supported by medical opinion evidence and is not the product of the ALJ's own lay interpretation of the evidence. *Steve P. v. Comm'r of Soc. Sec.*, 2021 WL 307566, *7 (W.D.N.Y. 2021) ("[t]he ALJ's RFC finding accounts for the limitations assessed by [consulting physician], while also crediting plaintiff's hearing testimony in assessing additional limitations"); *O'Sullivan v. Comm'r of Soc. Sec.*, 2020 WL 1180659, *7 (W.D.N.Y. 2020) (ALJ properly "considered the subsequent information and [plaintiff's] subjective allegations when formulating the RFC[;] . . . [t]he ALJ did not err . . . by including greater limitations in her RFC determination than those opined by [the consulting physician]"); *Wakefield v. Comm'r of Soc. Sec.*, 2020 WL 3100852, *5 (W.D.N.Y. 2020) ("remand is not warranted on the grounds that the ALJ included greater limitations in her RFC determination than those opined by [the consulting physician] or assessed a sit/stand option based upon [plaintiff's] own testimony").

        To the extent plaintiff maintains that the ALJ placed undue reliance on his daily activities in evaluating the medical opinions or in formulating his RFC (Docket # 12-1 at 10), I disagree. Review of the ALJ's decision demonstrates that she properly formulated plaintiff's RFC based upon her review of the entire record as a whole, including his extensive daily activities. *See Georgiana W. v. Comm'r of Soc. Sec.*, 2021 WL 2809553, *10 (W.D.N.Y. 2021)

("it was not improper for the ALJ to consider plaintiff's reported ability to engage in the activities of daily living . . . when weighing the opinion evidence") (collecting cases); *Burch v. Comm'r of Soc. Sec.*, 2019 WL 922912, *5 (W.D.N.Y. 2019) ("[a]ny suggestion by [plaintiff] that the ALJ should not have considered his daily activities in formulating the RFC is incorrect") (citing 20 C.F.R. § 416.929(c)(3)); *Durante v. Colvin*, 2014 WL 4843684, *2 (D. Conn. 2014) (ALJ properly discussed plaintiff's activities of daily living when formulating RFC; "[w]hile that court's admonition as to the ill wisdom of relying thoughtlessly on evidence of a claimant's ability to manage activities of daily living . . . for the purpose of discrediting evidence of more serious-seeming RFC restrictions in the work context is well-taken, the ALJ does not appear to have erred in this way here"); *Prue v. Comm'r of Soc. Sec.*, 2014 WL 37669, *10 (D. Vt. 2014) ("[i]t was proper for the ALJ to consider [plaintiff's] daily activities in determining her RFC"); *Bonville v. Colvin*, 2013 WL 3745882, *5 (N.D.N.Y. 2013) ("[c]ontrary to [plaintiff's] arguments, the ALJ properly considered her activities of daily living . . . , as well as [plaintiff's] testimony that she could work part-time, and evidence that she declared that she was ready, willing, and able to work during the time period for which she claims disability benefits"); *DiMartino v. Astrue*, 2009 WL 1652167, *3 (W.D.N.Y. 2009) ("[t]he ALJ also properly considered [p]laintiff's daily activities – including his part-time employment – in . . . determining his RFC").

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of SSI was based on substantial evidence and was not erroneous as a matter of law. Accordingly, the ALJ's decision is affirmed. For the reasons stated above, the

Commissioner's motion for judgment on the pleadings **(Docket # 13)** is **GRANTED**.  Plaintiff's motion for judgment on the pleadings **(Docket # 12)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated:  Rochester, New York
        August 11, 2022